IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ANNIE TATE                                                                                               PLAINTIFF

v.                                                                        CIVIL ACTION NO. 1:11-CV-00268-GHD-DAS

OFFICER RICK SHARP, Individually and
in His Official Capacity; OKTIBBEHA COUNTY;
and OKTIBBEHA COUNTY SHERIFF'S DEPARTMENT                                 DEFENDANTS

MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANT OFFICER RICK SHARP'S MOTION FOR QUALIFIED IMMUNITY

Presently before the Court in this civil rights action is a motion for qualified immunity [11] filed by Defendant, Officer Rick Sharp. Upon due consideration of the motion, response, reply, accompanying briefs, responsive briefs and attached documents, rules, and authorities,[1] the Court finds that the motion for qualified immunity should be granted with respect to Plaintiff's excessive force claim and First Amendment free speech claim, but denied with respect to Plaintiff's false arrest claim and malicious prosecution claim on evidence sufficiency grounds.

*A. Overview*

On December 27, 2011, Plaintiff Annie Tate ("Plaintiff") filed suit against Officer Rick Sharp, individually and in his official capacity ("Sharp"); Oktibbeha County; and the Oktibbeha County Sheriff's Department. She alleges her constitutional rights were violated under 42 U.S.C. § 1983 when she was falsely arrested, subjected to excessive force, maliciously prosecuted, and denied her right to free speech. She further alleges that Defendants' acts were

---

[1] Plaintiff filed an "amended response" [21] following Defendant's submission of his reply in support of the motion for qualified immunity. This "amended response," which functions as a sur-reply, is not properly before the Court. Because the proper procedure is the submission of a motion, a response, and a reply, and because Plaintiff did not seek leave of Court to file a sur-reply, the Court will not consider the "amended response" in its determination of the motion. *See* FED. R. CIV. P. 83(b); *Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 489 (5th Cir. 2010). However, the Court notes that even if the sur-reply had been considered in the Court's determination of the motion, the Court would have reached the same result.

1

committed as a result of policies and customs of Oktibbeha County and the Oktibbeha County Sheriff's Department. Defendants have answered the complaint, Sharp has now filed a motion for qualified immunity [11] on Plaintiff's claims against him in his individual capacity for (a) false arrest, (b) excessive force, (c) malicious prosecution, and (d) free speech right violations. The Court will necessarily cabin its analysis to the claims asserted against Sharp.

*B. Legal Standard*

A motion for qualified immunity is often resolved as a summary judgment motion, but may be considered a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); 13D WRIGHT, MILLER, COOPER & FREER, FEDERAL PRACTICE AND PROCEDURE § 3573.3 (3d ed. 1998). A Rule 12(b)(6) motion to dismiss is untimely once a defendant has answered the complaint. *See* FED. R. CIV. P. 12(b) (motion to dismiss under Rule 12(b)(6) "must be made before pleading if responsive pleading is allowed"). Because Defendants answered the complaint before Sharp's motion was filed, and because the motion was filed at such an early stage in the case, the Court ordinarily would treat the motion as a Rule 12(c) motion for judgment on the pleadings, which is governed by the same standards as a Rule 12(b)(6) motion. *See Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). However, because Plaintiff attached an affidavit to her response to the motion for qualified immunity which includes some facts not alleged in the pleadings, and because the Court will not exclude this affidavit in its consideration of the motion, the Court gave the parties notice that it would treat Sharp's motion for qualified immunity as a motion for summary judgment under Rule 56. *See* FED. R. CIV. P. 12(d); *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998) ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment.").

Accordingly, the Court gave the parties an opportunity to submit responsive briefing and documentation. *See* Order [22]. The parties have each filed submissions, and the matter is now ripe for review.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where, as here, the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a

3

nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, No. 11–41345, 2012 WL 5285103, at *1 (5th Cir. Oct. 26, 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). With all the foregoing in mind, the Court now turns to the facts.

### C. Factual Background

The Court now weaves together the factual background of this case, noting the undisputed facts, and where the facts are disputed, drawing all reasonable inferences in favor of Plaintiff.[2]

The following facts are not in dispute: On February 20, 2010, Cassandra Tate ("Cassandra") contacted the Oktibbeha County Sheriff's Department to report the potential kidnapping of her seven-year-old child. Cassandra claimed her child was being held at the mobile home of her cousin, Jackie Tate Wilson ("Jackie").[3] Rick Sharp, a deputy sheriff with the Oktibbeha County Sheriff's Department drove out to Jackie's mobile home to investigate; Cassandra also drove to the residence in her own car. Upon arrival, Sharp knocked on the door of the residence, but no one came to the door. At some point thereafter, Sharp called his commanding officer, James Lindsey, and informed him that he had discovered that Cassandra was not being truthful about the supposed kidnapping and he could not get anyone to answer the door.[4] Plaintiff, a then-sixty-year-old female, drove up to Jackie's residence. (Jackie is

---

[2] The Court notes that compiling these facts was unusually tedious, as the parties' version of the facts seems to have evolved over the course of this proceeding, and at times, the parties contradict even themselves.

[3] The parties now agree that the child had been living with Jackie for a few months while Cassandra had been looking for work and a new place to live in Houston, Texas.

[4] In the investigation report concerning the incident, which is attached to Sharp's responsive briefing, it is noted that upon Sharp's arrival on the scene he called his commanding officer, James Lindsey, and told him that "he found out that Cas[s]andra was not telling the truth about the matter[] and he could not get anyone to answer the

4

Plaintiff's daughter.) Plaintiff noticed Sharp's cruiser parked in Jackie's yard, went next door to her other daughter's residence, and then returned to her car and backed into Jackie's yard. She walked over to the vehicle belonging to her niece Cassandra and asked her what was going on.[5]

Sharp approached Plaintiff. Plaintiff asked him, "What is going on?" Some exchange took place between the two concerning the potential kidnapping and whether the child was being held in Jackie's residence. Sharp began to question Plaintiff about the child. He also asked Plaintiff who was in the residence, and she said she did not know. The conversation escalated. At some point, Plaintiff stopped responding to Sharp's questions. Plaintiff expressed her desire to leave the scene and got in her car to leave. Sharp expressed his desire for Plaintiff to remain on the scene for further questioning. Most of what transpired next is in dispute, but the parties agree that at one point Plaintiff was attempting to close her car door to leave when Sharp placed his hand on the post between the front and back driver's doors and Sharp's little finger was inadvertently crushed in the door facing.[6]

Taking Plaintiff's version of the facts as true, Plaintiff tried to get out of the car when Sharp asked her to, but was slow getting up. Sharp wrapped his hand around her clothes, choked her, forced her to the ground, put his knee in her back, and handcuffed her for the purpose of inducing her to tell him who was in the house. Plaintiff maintains that she suffered injuries as a result of these alleged incidents.

---

door at the location." Oktibbeha Cnty. Sheriff's Office Incident Supplement Page [23-1] at 5. The report notes that Lindsey advised Sharp that "we could not do anything until we found out what was going on and needed to see a court order to do anything concerning this matter." *See id.*

[5] Plaintiff claims Cassandra said to her, "I don't know. I'm just smoking a cigarette."

[6] Although Sharp initially contended in his motion for qualified immunity that Plaintiff had attempted to slam the door on his hand and that his hand was broken as a result, he now concedes in his subsequent brief in response to the Court's order that his little finger, not his hand, was injured, and that the incident was not intentional. *See* Oktibbeha Cnty. Sheriff's Office Incident Report [23-1] at 3.

Sharp's version of the facts is that Plaintiff was belligerent and refused to exit her vehicle. Sharp maintains that time and time again, he asked Plaintiff to exit her car, but she continued to refuse. Sharp further maintains that he informed Plaintiff she was under arrest for disorderly conduct but still could not get her to exit the vehicle. Sharp contends that he reached inside the car and took hold of Plaintiff's left arm to pull her out of the car, but Plaintiff grabbed the steering wheel with her right arm to resist being removed from the vehicle. Sharp maintains that he succeeded in physically removing Plaintiff from the car, and once out of the car, Plaintiff continued to resist. Sharp then maintains that he "took" her to the ground and handcuffed her in a standard police "take-down" procedure. Sharp maintains that all this time Plaintiff was yelling and screaming at Cassandra, telling her it was all her fault, and stating that she had heart trouble.

Although the parties dispute the exact details of what occurred, the parties agree that Sharp took Plaintiff to the ground and handcuffed her in what was apparently a take-down maneuver; Plaintiff and her niece Cassandra pleaded with Sharp to remove the handcuffs from Plaintiff's wrists and release her; and Sharp acquiesced, removing the handcuffs from Plaintiff's wrists, informing her she was not under arrest, and instructing her to leave the scene.

Plaintiff alleges that she then got on her knees and pulled herself up to a standing position by holding on to her car door for support. It is undisputed that Plaintiff immediately left the scene and went directly to the Oktibbeha County Sheriff's Department to file a complaint against Sharp for assault. Sharp says he went to get an X-ray of his hand.

At the sheriff's department, Plaintiff filed a misconduct report on Sharp stating that Sharp had "caught hold to [her] clothes," "slammed [her] up against the ground," "handcuffed [her]," and "choked [her] with [her] shirt." *See* Pl.'s Statement [23-2] at 4. The other events that occurred at the sheriff's department are in dispute, but it is undisputed that Sharp signed an

6

affidavit against Plaintiff at some point subsequent to Plaintiff's filing of the misconduct complaint against Sharp.

Taking Plaintiff's version of the facts as true, while Plaintiff was making out the misconduct report, Sharp showed up and told Lindsey to arrest Plaintiff. Plaintiff asked, "For what?" and Sharp said he did not know. After Plaintiff finished making out the report, Plaintiff maintains that Sharp and Lindsey arrested her, did not read her her *Miranda* rights, told her they were actually not arresting her, but then took her fingerprints and gave her an orange top. According to Plaintiff, the bond was set at $500.00, but Lindsey told her she could pay $25.00 to bond out. Plaintiff alleges that she paid the $25.00 and was released.

It is undisputed that after leaving the sheriff's department, Plaintiff went to the Oktibbeha County Hospital for treatment. Plaintiff alleges that she received treatment for the injuries to her shoulder and neck, a bruise on her breast, a scratch on her chin, body and back pain, and blood in her urine. Her medical records reveal that the reason for her exam was stated to be "[r]ight shoulder pain after assault" and the findings were that she had some pain but tested negative for fracture or dislocation of bone. *See* Pl.'s Med. Report [23-3] at 2. The impression was that she was in no acute distress. *Id.* at 2, 4.

Plaintiff then returned to the sheriff's department to file charges against Sharp. Sharp maintains that Plaintiff was told by Lindsey that no charges would be filed against Sharp until an investigation was conducted into the matter and until Plaintiff had met with the Sheriff concerning the matter.

On April 19, 2010, Oktibbeha County Circuit Court Judge Lee J. Howard held a probable cause hearing concerning Plaintiff's allegations against Sharp. Both Plaintiff and Deputy Brett Watson, the investigating officer, testified at the hearing. Based on the testimony and evidence

presented, Judge Howard declined to issue an arrest warrant for Sharp, and no further proceedings ensued in connection with Plaintiff's charge against Sharp until Plaintiff commenced this civil suit.

Sharp and the Oktibbeha County Sheriff's Department charged Plaintiff with aggravated assault in connection with the above incidents. Plaintiff was prosecuted on these charges until all charges were dismissed without prejudice. *See* Nolle Prosse [23-6] at 1.

### D. *Qualified Immunity*

Sharp argues he is entitled to qualified immunity on the Section 1983 claims against him in his individual capacity, because he executed a valid arrest of Plaintiff and took her into custody without causing her any injury, and alternatively, even if Sharp's actions violated Plaintiff's constitutional rights, Sharp's actions were not objectively unreasonable in light of clearly established law.

"Section 1983 provides a cause of action for persons who have been 'depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws' of the United States by the actions of a person or entity operating under color of state law." *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010) (quoting 42 U.S.C. § 1983). "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L. Ed. 2d 504 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57, 98 S. Ct. 1042, 5 L. Ed. 2d 252 (1978)). Section 1983 claims may be brought against a state official in his individual capacity but may not be brought against a state official in his official capacity. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24, 117 S. Ct.

8

1055, 137 L. Ed. 2d 170 (1997) (citing *Hafer v. Melo*, 502 U.S. 21, 25–31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)).

Section 1983 claims brought against a state official in his individual capacity are subject to the affirmative defense of qualified immunity. Qualified immunity has been recognized as a defense for government officials "where it [has been] necessary to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service." *Wyatt*, 504 U.S. at 167, 112 S. Ct. 1827.

In determining whether an official is entitled to qualified immunity, courts must consider whether the facts alleged, taken in the light most favorable to the plaintiff, (1) allege a violation of a constitutional right and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). Courts have discretion to determine which of these questions to address first. *Pearson*, 555 U.S. at 236, 129 S. Ct. 808. The Fifth Circuit has recognized that Section 1983 claims against public officials are subject to a heightened pleading requirement; a plaintiff is required to assert "claims of specific conduct and actions giving rise to a constitutional violation." *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

"On a motion for summary judgment based on qualified immunity, the burden falls on the plaintiff to rebut the defense 'by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.' " *Samadian v. Meade*, No. 12–10090, 2012 WL 5177373, at *1 (5th Cir. Oct. 19, 2012) (per curiam) (quoting *Gates v. Tex. Dept. of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).

9

The Court examines Plaintiff's Section 1983 claims against Sharp in his individual capacity for (a) false arrest, (b) excessive force, (c) malicious prosecution, and (d) free speech violations in light of the foregoing standard.

### a. False Arrest

First, Sharp argues he is entitled to qualified immunity on Plaintiff's false arrest claim because he had probable cause to arrest Plaintiff, and alternatively, that even if he did not have probable cause, he reasonably but mistakenly concluded that probable cause was present.

For an arrest to be lawful, it must be supported by probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004) (citing *Hinshaw v. Doffer*, 785 F.2d 1260, 1266 (5th Cir. 1986)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).

A police officer has qualified immunity if he "reasonably but mistakenly conclude[s] that probable cause is present." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). Based on this standard, if Sharp could reasonably have believed Plaintiff's arrest to be lawful in light of the clearly established law at the time, then Sharp is entitled to qualified immunity.

The Court first notes with respect to Plaintiff's false arrest claim that it is unclear from the facts alleged exactly when Sharp arrested Plaintiff. Sharp initially contended that he arrested Plaintiff at the scene of the potential kidnapping. However, now, the parties agree that Sharp handcuffed Plaintiff at the scene, but then removed the handcuffs, told Plaintiff she was not

10

under arrest, and advised her to leave the scene. Thus, the parties are in agreement that the arrest did not occur at the scene of the potential kidnapping. Plaintiff alleges that the arrest occurred at the sheriff's department after she filed the misconduct complaint against Sharp. Sharp does not directly address this in his arguments, but does maintain that he signed an affidavit against Plaintiff after she filed the misconduct complaint against him.

Plaintiff contends that Sharp is not entitled to qualified immunity on her false arrest claim because Sharp's conduct violated clearly established law and genuine disputes of material fact exist concerning the reasonableness of Sharp's conduct. Plaintiff argues that Sharp had no probable cause to arrest her or detain her at the scene in connection with the potential kidnapping, and that that the lack of probable cause is evident in that (1) Sharp had determined even from the time he arrived on the scene that Cassandra was being untruthful and no potential kidnapping had taken place, (2) nothing anyone said or done suggested that Plaintiff was connected to a kidnapping, and (3) Plaintiff had no information she was required to share with Sharp.

These three arguments are not well taken. First, although it is noted in the investigation report concerning the incident that Sharp had called his commanding officer, James Lindsey, to inform him that Cassandra was not being truthful about the kidnapping, the report also notes that Lindsey advised Sharp that the sheriff's department could not do anything until they found out what was going on. Thus, it appears that Sharp was there to find out what was going on. In light of the fact that Sharp was not allowed to enter the mobile home, he would have had considerable difficulty finding out what was going on without asking some questions to those on the premises. Plaintiff next argues that nothing anyone said or did suggested that Plaintiff was connected with a kidnapping. However, this argument is similarly unpersuasive, as Plaintiff was by her own

11

admission resistant to questioning and determined to leave the scene despite Sharp's request that she remain for further questioning. Finally, Plaintiff argues that she had no information she was required to share with Sharp. The Court finds this argument is also not well taken. If Sharp had arrested Plaintiff at the scene, the Court's inquiry would end here. However, as stated, it is undisputed that Sharp did not arrest Plaintiff at the scene, and that any arrest of Plaintiff was effected after Plaintiff voluntarily came to the sheriff's department to file a misconduct complaint against Sharp. Plaintiff contends that it is evidence of lack of probable cause that Sharp did not arrest her until he allegedly used excessive force on her at the scene, everyone left the scene, Sharp determined any kidnapping allegations were false, and Plaintiff filed her misconduct complaint against Sharp. Taking Plaintiff's allegations as true, genuine disputes of fact exist concerning whether Sharp lawfully arrested Plaintiff. The Court notes that Plaintiff's allegations that she was told she was "not under arrest" and was not read her Miranda rights present factual questions concerning the validity of the arrest itself. Therefore, because genuine disputes of material fact exist as to what occurred between Sharp and Plaintiff which must be resolved before the Court can determine whether Sharp is immune from suit on Plaintiff's false arrest claim, Sharp's motion for qualified immunity [11] is denied on grounds of evidence sufficiency. *See Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996); *Hunter v. Bishop*, 51 F. App'x 482, 2002 WL 31318797, at *1 (5th Cir. 2002) (per curiam).

### b. Excessive Force

Sharp next argues that he is entitled to qualified immunity on Plaintiff's excessive force claim against him. Excessive force claims should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir.

12

1998) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). To succeed on an excessive force claim, the plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703, *clarified*, 186 F.3d 633, 634 (5th Cir. 1999). To succeed on an excessive force claim, the plaintiff must demonstrate that he "suffered at least some form of injury" from the defendant's actions that is more than *de minimis*. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (quotation marks omitted). The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case. *Williams v. Brammer*, 180 F.3d 699, 703–04 (5th Cir. 1999).

Plaintiff argues that (1) a medical injury occurred (2) during the altercation with Sharp (3) which resulted directly and only from a use of force that was clearly excessive. Continuing to assume Plaintiff's factual allegations are true, Plaintiff, after being told she was under arrest for disorderly conduct, expressed her desire to leave the scene, got in her car and was attempting to close the driver door so that she could leave when the car door inadvertently shut on Sharp's finger, injuring it. She was trying to get up and exit the car when Sharp grabbed her clothes and tried to choke her and then forced her down on the ground, planted his knee in her chest, and placed handcuffs on her wrists. Taking Plaintiff's factual allegations as true, she suffered injuries as a result of these incidents.

First, with respect to whether Plaintiff has shown that a medical injury occurred, the Court notes that Plaintiff claims she suffered a wide range of injuries as a result of the alleged incidents, including shoulder sprain, arm sprain, bruised chest, a scratch on her chin, body and back pain, and blood in her urine. However, Plaintiff's medical records show that although

13

Plaintiff went to the Oktibbeha County Hospital complaining of pain from an assault, the medical examination revealed only that she had some presence of arthritis; she had no fracture and no dislocation of bone, and she was not in acute distress.

Even if the Court assumes that Plaintiff has shown she suffered an injury, she fails to satisfy the second prong of her excessive force claim that any injury she suffered resulted directly and only from the use of force that was clearly excessive to the need.[7] Plaintiff argues that the force was unreasonable because Sharp had told his commanding officer upon arriving on the scene of the potential kidnapping that Cassandra was not being truthful about the kidnapping. This line of argument has already been addressed earlier and is not well taken. Plaintiff has not shown that even if force was deployed against her how such force was unreasonable under the Fourth Amendment. "The right to make an arrest necessarily carries with it the right to use some degree of force or threat thereof to effect it." *Huang v. Harris County*, 264 F.3d 1141, 2001 WL 822534, at *9 (5th Cir. 2001) (per curiam) (citing *Graham*, 490 U.S. at 396, 109 S. Ct. 1865). Courts look to the facts of each particular case to determine whether any force used was resaonable. *See id.* Based on all the foregoing, the Court finds that Plaintiff has failed to allege a violation of her Fourth Amendment right to be free from excessive force. Therefore, Sharp's motion for qualified immunity is granted as to this claim.

### c. First Amendment Free Speech

Sharp next argues that he is entitled to qualified immunity on Plaintiff's First Amendment free speech claim. In this analysis, the Court considers whether the facts alleged, taken in the light most favorable to Plaintiff allege a violation of a First Amendment right to free

---

[7] Sharp maintains that during an interview with the investigating officer, the two adult witnesses to the events, Cassandra Tate and Derek Box, stated that Sharp performed a standard take-down maneuver and that Plaintiff suffered no injury as a result. However, Sharp has not attached sworn statements from these two individuals verifying this information. Accordingly, the Court does not consider this in its analysis.

speech, and whether that right was clearly established at the time of the alleged misconduct. *See Saucier*, 533 U.S. at 200, 121 S. Ct. 2151.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. AMEND. I. Adverse government action taken in retaliation for the exercise of protected speech violates the First Amendment. *See Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999). The validity of a First Amendment claim may depend on whether probable cause exists for the arrest. "If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008).

Plaintiff makes two factual allegations with respect to her First Amendment claim. First, Plaintiff alleges that she was "entitled to express her First Amendment right to Free Speech. She was being questioned and [Plaintiff] gave [Sharp] her answer. [Sharp] does not have to agree with the answer [given]." Pl.'s Answer to Sharp's Supplement to Mot. for Qualified Immunity [24] at 6. It is not clear to this Court from Plaintiff's allegations and arguments what, if any, constitutionally protected speech she was engaged in at the time of the alleged circumstances. It is essential to know what is the alleged content or subject matter of the speech in order to analyze whether that speech is protected by the Constitution. Thus, this allegation is not helpful to Plaintiff's allegations concerning a First Amendment free speech violation.

Second, Plaintiff alleges that she exercised her right to remain silent when Sharp questioned her and was arrested in retaliation for remaining silent. The right to remain silent derives from the Fifth Amendment, not the First Amendment, and thus, allegations concerning a right to remain silent similarly are not helpful to her allegations of a First Amendment claim.

15

Because Plaintiff has failed to allege a First Amendment free speech claim, Sharp is entitled to qualified immunity on Plantiff's First Amendment free speech claim.

### d. Malicious Prosecution

Finally, Sharp argues that he is entitled to qualified immunity on Plaintiff's malicious prosecution claim. Sharp contends that as a matter of law Plaintiff's malicious prosecution claim must fail because no malicious prosecution claim is viable if brought under Section 1983. This argument is not well taken. The Fifth Circuit has recognized that "malicious prosecution claims can fall under the umbrella of the Fourth Amendment and may be actionable under [Section] 1983." *See Price v. Roark*, 256 F.3d 364, 370 (5th Cir. 2001) (citing *Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2000)). To succeed on a Section 1983 malicious prosecution claim, Plaintiff must show that she was exposed to an unreasonable search or seizure in violation of the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 275, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).

Plaintiff argues that her malicious prosecution claim is viable because her right against malicious prosecution was not standing alone but derived from her Fourth Amendment right to be free from unreasonable searches and seizures. Plaintiff argues in support that "[h]er arrest was a product of her complaint against [Sharp] for using excessive force against her, and causing her injury" and that after her arrest "[Sharp] continued to prosecuted [sic] [Plaintiff] without a reasonable basis or probable cause for such a prosecution." Pl.'s Mem. Br. Opp'n to Sharp's Mot. Qualified Immunity [18-1] at 5.

The Court has determined that genuine disputes of material fact exist concerning whether Sharp had probable cause to arrest Plaintiff for disorderly conduct, and otherwise as to what occurred between Sharp and Plaintiff. These genuine disputes must be resolved before the Court

16

can determine whether Sharp is immune from suit on Plaintiff's malicious prosecution claim. Thus, the Court finds that Sharp's motion for qualified immunity [11] should be denied as to the malicious prosecution claim based on issues of evidence sufficiency. *See Behrens*, 516 U.S. at 313, 116 S. Ct. 834; *Hunter*, 2002 WL 31318797, at *1.

*E. Conclusion*

Overall, the Court finds that genuine disputes of material fact exist concerning Plaintiff's false arrest claim and malicious prosecution claim against Sharp that preclude summary adjudication. These genuine disputes must be resolved before the Court can determine whether Sharp is immune from suit on these two claims. Thus, the Court finds that Sharp's motion for qualified immunity [11] should be DENIED as to the false arrest claim and the malicious prosecution claim on evidence sufficiency grounds.

The Court further finds that no genuine disputes of material fact exist with respect to Plaintiff's excessive force claim and First Amendment free speech claim against Sharp. Thus, Sharp's motion for qualified immunity [11] should be GRANTED as to Plaintiff's excessive force claim and First Amendment free speech claim. To the extent Plaintiff's excessive force claim and First Amendment free speech claim are asserted against Sharp, the same are DISMISSED.

A separate order in accordance with this opinion shall issue this day.

THIS, the 22 day of February, 2013.

_____
SENIOR JUDGE