ANNIE TATE                                                    PLAINTIFF

v.                                    CIVIL ACTION NO. 1:11-cv-00268-GHD-DAS

OFFICER RICK SHARP, Individually and
in His Official Capacity; OKTIBBEHA COUNTY;
and OKTIBBEHA COUNTY SHERIFF'S DEPARTMENT            DEFENDANTS

## MEMORANDUM OPINION

On December 27, 2011, Plaintiff Annie Tate ("Plaintiff") filed suit against Officer Rick

Sharp, individually and in his official capacity ("Defendant Sharp"); Oktibbeha County; and the

Oktibbeha County Sheriff's Department. Plaintiff alleges her constitutional rights were violated

under 42 U.S.C. § 1983 when she was falsely arrested, subjected to excessive force, maliciously

prosecuted, and denied her right to free speech. She further alleges that Defendants' acts were

committed as a result of policies and customs of Oktibbeha County and the Oktibbeha County

Sheriff's Department.

Presently before the Court in this civil rights action are a plethora of motions: a motion

for summary judgment [67] filed by Defendants Oktibbeha County and Oktibbeha County

Sheriff's Department; a motion to bifurcate [72 & 76] filed by Plaintiff[1]; a motion for summary

judgment [73, 74, & 75] filed by Plaintiff[2]; a motion to strike certain motions [78] filed by

Defendants Sharp, Oktibbeha County, and Oktibbeha County Sheriff's Department; and a

---

[1] Plaintiff has filed two identical motions to bifurcate liability and damages: one styled as "motion to bifurcate" [72] and one styled as "second motion to amend/correct motion to bifurcate" [76]. The Court will refer to these two identical motions throughout this opinion as Plaintiff's motion to bifurcate.

[2] Plaintiff has filed three identical motions for summary judgment: one styled as "motion for summary judgment" [73], one styled as "first motion for summary judgment" [74], and one styled as "first motion to amend/correct motion to bifurcate" [76]. The Court will refer to these three identical motions throughout this opinion as Plaintiff's motion for summary judgment.

renewed motion to dismiss [79] this action for failure to comply with Court Order filed by Defendants Sharp, Oktibbeha County, and Oktibbeha County Sheriff's Department.[3] These matters are ripe for review, and the Court is ready to rule.

### A. Motion to Strike

First, the Court addresses the motion to strike [78] filed by Defendants Sharp, Oktibbeha County, and Oktibbeha County Sheriff's Department (collectively, "Defendants"), wherein Defendants request that the Court strike certain motions filed by Plaintiff after the motion deadline imposed by the Court.

On September 17, 2013, the United States Magistrate Judge assigned to this cause entered an Order [51] granting Defendants' motion to extend the case management deadlines and imposing a new motions deadline of December 6, 2013. On January 8, 2014—more than 30 days after the motion deadline—Plaintiff filed her motion to bifurcate liability and damages [72] and her motion for summary judgment [73]. Plaintiff has not filed a response to the motion to strike within the time allotted; this is grounds to grant Defendants' motion to strike as unopposed under the Court's local rules. See L. UNIF. CIV. R. 7(b)(3)(E). The Court further notes that "[a]ny nondispositive motion served beyond the motion deadline imposed in the Case Management Order may be denied solely because the motion is not timely served." See L. UNIF. CIV. R. 7(b)(11). For these reasons, the Court grants Defendants' motion to strike Plaintiff's motion to bifurcate.[4]

---

[3] Also pending before the Court are the following: a motion to strike [69] Plaintiff's designated experts filed by Defendants Sharp, Oktibbeha County, and Oktibbeha County Sheriff's Department, as well as a motion [77] in opposition to Defendants' motion to strike Plaintiff's designated experts filed by Plaintiff. The Court will rule on those motions at a later date.

[4] The Court notes that even if it had reached the merits of the untimely filed motion to bifurcate [72 & 76], the Court would have denied the motion based on conservation of resources and judicial efficiency.

The Court denies Defendants' motion to strike Plaintiff's untimely filed motion for summary judgment, but finds that Plaintiff's motion for summary judgment must be denied on the merits, as explained below in "Section C. Motions for Summary Judgment."

### B. Renewed Rule 37 Motion to Dismiss

The Court now turns to the merits of Defendants' renewed motion to dismiss [79] this case for failure to comply with Court Order.

While merits-discovery was stayed pending the Court's ruling on Defendant Sharp's motion for qualified immunity [11], Plaintiff filed a motion to compel [14] discovery responses from Defendants. The United States Magistrate Judge denied this motion, because Plaintiff had prematurely served merits-discovery on Defendants prior to the attorneys' discovery conference and without otherwise seeking leave to do so—in violation of the rules of the Court. The Court then entered an Order [25] and opinion [26] dismissing Plaintiff's excessive force claim and First Amendment free speech claim against Defendant Sharp on qualified immunity grounds, sustaining all other claims against Defendant Sharp, and lifting the stay on merits-discovery.

Subsequently, the Magistrate Judge set a Rule 16.1 telephonic case management conference to be initiated by Plaintiff's counsel and advised counsel for the parties to send in their confidential settlement memoranda and proposed case management order by March 25, 2013. Plaintiff's counsel did not initiate the conference, nor did he submit a confidential settlement memorandum or proposed case management order. Therefore, the Magistrate Judge entered an Order [31] sanctioning Plaintiff's counsel $100.00 and also entered a Case Management Order [32] setting pretrial deadlines in the case.

On June 19, 2013, Plaintiff's counsel filed a motion [41] for a protective order to continue her deposition and to continue the trial due to the election of Plaintiff's counsel as

3

mayor of the City of Jackson. The Magistrate Judge entered an Order [42] granting Plaintiff's request to continue her deposition and ordering Plaintiff to file a motion to substitute counsel and/or to allow counsel to withdraw within fourteen days of the Order. The undersigned entered a separate Order [43] denying Plaintiff's request for a continuance of the trial date, as the trial setting allowed adequate time for preparation and substitution of counsel, if deemed appropriate.

On July 22, 2013, Defendants filed a motion to compel [44] Plaintiff to appear at her deposition and to more fully respond to discovery, as Plaintiff had failed to comply with the Court's fourteen-day deadline to file a motion to substitute counsel or to allow counsel to withdraw. Plaintiff did not respond to the motion to compel. The Magistrate Judge entered an Order [47] granting the unopposed motion to compel and ordered Plaintiff to appear for her deposition within twenty-eight days and to serve supplemental responses to the interrogatories referenced in the motion to compel within fourteen days. The Magistrate Judge declined to impose sanctions, but cautioned that if Plaintiff failed to comply with the Order or otherwise failed to cooperate with discovery, sanctions would likely be imposed. Meanwhile, the Magistrate Judge entered an Order [50] denying a motion for Plaintiff's new attorney to appear *pro hac vice*, as the application did not comport with the rules of the Court. The Magistrate Judge also granted Defendants' request to extend the case management deadlines.

Subsequently, Defendants filed a motion to dismiss [52] the case pursuant to Rule 37 based on Plaintiff's continued failure to cooperate in discovery. Rather than filing a response to Defendants' motion to dismiss [52], Plaintiff filed a motion to dismiss [55] Defendants' motion. Defendants subsequently filed a reply in support of their motion to dismiss [52]. On October 21, 2013, this Court entered an Order [61] and memorandum opinion [62] granting Defendants' motion to dismiss in part, finding that Defendants had suffered prejudice due to Plaintiff's delays

4

and non-cooperation in discovery, warning Plaintiff and her counsel that although the Court would not dismiss the case at that time, further failure to comply with orders and deadlines would result in dismissal of the case. The Court further ordered Plaintiff's counsel to reimburse Defendants' counsel $1,134.50 for the reasonable expenses caused by Plaintiff's failure to obey the Court's Orders.

After the Court entered its Order imposing sanctions and instructing Plaintiff to cooperate in further discovery, Defendants and Plaintiff noticed the deposition of Plaintiff; Defendant Defendant Sharp filed a notice of service of supplemental discovery responses to Plaintiff; and Plaintiff filed a notice of service of Plaintiff's additional medical records to Defendants. *See* Notices [63, 64, 66, & 84].

On January 20, 2014, Defendants filed a renewed motion to dismiss [79] this case for Plaintiff's counsel's failure to comply with the Court's Order [61]. Specifically, Defendants maintain that Plaintiff's counsel have not paid the $1,134.50 ordered to be paid to Defendants' counsel in reimbursement for reasonable expenses caused by Plaintiff's past failure to obey the Court's Orders. Defendants further maintain that Plaintiff's untimely filing of seven motions after the Court's motion deadline constitutes further proof of non-compliance with the Court's Orders. For these reasons, Defendants renew their request for dismissal pursuant to Rule 37 of the Federal Rules of Civil Procedure. Plaintiff has not filed a response, and the time for response has now passed. Accordingly, this matter is ripe for review.

A district court has the inherent power "to control its docket by dismissing a case as a sanction for a party's failure to obey court orders." *Gonzales v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (internal citations omitted). "Rule 37 empowers the district court to compel compliance with Federal discovery procedures through a broad choice of remedies and

penalties." *Griffin v. Aluminum Co. of Am.*, 564 F.2d 1171, 1172 (5th Cir. 1977).   Rule 37 allows a district court to impose the following sanctions: **(1)** the court may order that designated facts be taken as true in favor of the party seeking compliance with discovery, FED. R. CIV. P. 37(b)(2)(A)(i); **(2)** the court may enter an order refusing to allow the noncomplying party to support or oppose designated claims or defenses, or prohibiting the party from entering designated matters in evidence, FED. R. CIV. P.  37(b)(2)(A)(ii); **(3)** the court may enter an order striking pleadings or parts thereof, or staying further proceedings until the party obeys the order, FED. R. CIV. P. 37(b)(2)(A)(iii), (iv); **(4)** the court may enter an order treating as contempt the failure to obey any orders,[5] FED. R. CIV. P. 37(b)(2)(A)(vii); **(5)** the court may require the party to pay the reasonable expenses, including attorney's fees, caused by the party's failure to obey the court's orders, FED. R. CIV. P. 37(C); **(6)** the court may enter an order dismissing the action or proceeding in whole or in part, FED. R. CIV. P. 37(b)(2)(A)(v); and **(7)** the court may render a default judgment against the noncomplying party, FED. R. CIV. P. 37(b)(2)(A)(vi).

Rule 37 of the Federal Rules of Civil Procedure provides in pertinent part:

> (b) Failure to Comply with a Court Order.
>
> . . .
>
> (2) Sanctions Sought in the District Where the Action is Pending.
>
> (A) For Not Obeying a Discovery Order.  If a party . . . fails to obey an order to provide or permit discovery, . .

---

[5] The exception to this is that the court may not enter an order treating as contempt the failure to obey "an order to submit to a physical or mental examination." *See* FED. R. CIV. P. 37(b)(2)(A)(vii).

. the court where the action is pending may issue further
just orders. They may include the following:

. . .

(v) dismissing the action or proceeding in
whole or in part[.]

FED. R. CIV. P. 37(b)(2)(A)(v).

Dismissal of a case may be ordered as a sanction for violating a discovery order only
when (1) the refusal to comply results from willfulness or bad faith and is accompanied by a
clear record of delay or contumacious conduct; (2) the violation of the discovery order is
attributable to the client, as opposed to counsel; (3) the non-compliant party's conduct
substantially prejudices the opposing party; and (4) a less drastic sanction would not
substantially achieve the desired deterrent effect. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1380–1381
(5th Cir. 1994) (citing *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990)).
The Fifth Circuit has noted that a district judge should use the draconian remedy of dismissal
with prejudice only in extreme circumstances. *See Griffin*, 564 F.2d at 1172; *Roy v. ADM Grow
Mark*, 211 F.3d 593, 2000 WL 329273, at *3 (5th Cir. 2000). "Deliberate, repeated refusals to
comply with discovery orders have been held to justify the use of this ultimate sanction."
*Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979) (dismissal affirmed where plaintiff
three times refused to appear for a deposition); *see also Jones v. La. State Bar Ass'n*, 602 F.2d 94
(5th Cir. 1979) (dismissal where plaintiff deliberately refused two orders to produce recordings
and documents he possessed); *Emerick v. Fenick Indus.*, 539 F.2d 1379 (5th Cir. 1976) (default

7

entered where defendant ignored three orders to produce documents). *See also Pegues v. PGW Auto Glass, L.L.C.*, 451 F. App'x 417, 418, 2011 WL 5903455, at *1 (5th Cir. 2011).

In the case *sub judice*, the Court cannot ascertain to what degree, if any, Plaintiff was personally responsible for the repeated delays and failures to cooperate with discovery—although it is apparent to the Court that Plaintiff's counsel is at least largely responsible for the previous failures due to Plaintiff's counsel being elected mayor of the City of Jackson and Mays' failure to file a proper motion for admission *pro hac vice*. However, the subsequent failure to reimburse Defendants' counsel as ordered by the Court, and failure to file seven motions before the motion deadline imposed by the Court in its Order extending the motion deadline [51], cannot be attributed to these earlier possible reasons for delay and noncompliance, as Plaintiff's counsel, Ali Muhammed ShamsidDeen, entered an appearance on July 31, 2013, and has been representing Plaintiff ever since. Because the Court did not include a timeframe in its Order [61] and memorandum opinion [62] directing Plaintiff to reimburse Defendants the $1,134.50 for reasonable costs, the Court finds that Defendants' Rule 37 renewed motion to dismiss [79] shall be DENIED WITHOUT PREJUDICE.

### C. *Motions for Summary Judgment*

The Court now turns to the motions for summary judgment before it.

1. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, No. 11–41345, 2012 WL 5285103, at *1 (5th Cir. Oct. 26, 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)). With all the foregoing in mind, the Court turns to the factual background of this case.

2. Factual Background

The following facts are not in dispute: On February 20, 2010, Cassandra Tate ("Cassandra") contacted the Oktibbeha County Sheriff's Department to report the potential

9

kidnapping of her seven-year-old child. Cassandra claimed her child was being held at the mobile home of her cousin, Jackie Tate Wilson ("Jackie").[6] Defendant Sharp, a deputy sheriff with the Oktibbeha County Sheriff's Department, responded to a call and drove out to Jackie's mobile home to check on the welfare of the child; Cassandra also drove to the residence in her own car. Upon arrival, Defendant Sharp knocked on the door of the residence, but no one came to the door. At some point thereafter, Defendant Sharp called his commanding officer, James Lindsey, and informed him that he could not get anyone to answer the door.[7] Plaintiff, a then-sixty-year-old female, drove up to Jackie's residence. (Jackie is Plaintiff's daughter.) Plaintiff noticed Defendant Sharp's cruiser parked in Jackie's yard, went next door to her other daughter's residence, and then returned to her car and backed into Jackie's yard. She walked over to the vehicle belonging to her niece Cassandra and asked her what was going on.[8]

Defendant Sharp approached Plaintiff. Plaintiff asked him, "What is going on?" Some exchange took place between the two concerning the potential kidnapping and whether the child was being held in Jackie's residence. Defendant Sharp began to question Plaintiff about the child. He also asked Plaintiff who was in the residence, and she said she did not know. The conversation escalated. At some point, Plaintiff stopped responding to Defendant Sharp's questions. Plaintiff expressed her desire to leave the scene and got in her car to leave.

---

[6] The parties now agree that the child had been living with Jackie for a few months while Cassandra had been looking for work and a new place to live in Houston, Texas.

[7] In the investigation report concerning the incident, it is noted that upon Defendant Sharp's arrival on the scene he called his commanding officer, James Lindsey, and told him that "he found out that Cas[s]andra was not telling the truth about the matter[] and he could not get anyone to answer the door at the location." Oktibbeha Cnty. Sheriff's Office Incident Supplement Page [23-1] at 5. The report notes that Lindsey advised Defendant Sharp that "we could not do anything until we found out what was going on and needed to see a court order to do anything concerning this matter." *See id.* Defendant Sharp reiterates in his deposition that he and Lindsey discussed that a court order would be needed to either enter the residence or obtain a warrant to enter the residence and take possession of the child. *See* Def. Sharp Dep. [82-1] at 13.

[8] Plaintiff claims Cassandra said to her, "I don't know. I'm just smoking a cigarette."

10

Defendant Sharp expressed his desire for Plaintiff to remain on the scene for further questioning. Most of what transpired next is in dispute, but the parties agree that at one point Plaintiff was attempting to close her car door to leave when Defendant Sharp placed his hand on the post between the front and back driver's doors and Defendant Sharp's little finger was inadvertently hit in the door facing.[9]

Plaintiff alleges that she tried to get out of the car when Defendant Sharp asked her to, but was slow getting up. Plaintiff further alleges that Defendant Sharp wrapped his hand around her clothes, choked her, forced her to the ground, put his knee in her back, and handcuffed her for the purpose of inducing her to tell him who was in the house. Plaintiff maintains that she suffered injuries as a result of these alleged incidents.

Defendant Sharp's version of the facts is that Plaintiff was belligerent and refused to exit her vehicle. Defendant Sharp maintains that time and time again, he asked Plaintiff to exit her car, but she continued to refuse. Defendant Sharp further maintains that he informed Plaintiff she was under arrest for disorderly conduct but still could not get her to exit the vehicle. Defendant Sharp contends that he reached inside the car and took hold of Plaintiff's left arm to pull her out of the car, but Plaintiff grabbed the steering wheel with her right arm to resist being removed from the vehicle. Defendant Sharp maintains that he succeeded in physically unbuckled Plaintiff's seatbelt and removed Plaintiff from the car, and once out of the car, Plaintiff continued to resist. Defendant Sharp then maintains that he "took" her to the ground and handcuffed her in a standard police "take-down" procedure. Defendant Sharp maintains that all this time Plaintiff was yelling and screaming at Cassandra, telling her it was all her fault, and

_____

[9] Although Defendant Sharp initially contended in his motion for qualified immunity that Plaintiff had attempted to slam the door on his hand and that his hand was broken as a result, he now concedes that his little finger, not his hand, was injured, and that the incident was not intentional. *See* Oktibbeha Cnty. Sheriff's Office Incident Report [23-1] at 3; Def. Sharp Dep. [82-1] at 19, 20. This fact is not in dispute.

11

stating that she had heart trouble. Defendant Sharp maintains that he arrested Plaintiff on the scene.

Although the parties dispute the exact details of what occurred, the parties agree that Defendant Sharp took Plaintiff to the ground and handcuffed her in what was apparently a take-down maneuver; Plaintiff and her niece Cassandra pleaded with Defendant Sharp to remove the handcuffs from Plaintiff's wrists and release her; and Defendant Sharp acquiesced, removing the handcuffs from Plaintiff's wrists, informing her she was not under arrest, and instructing her to leave the scene.

Plaintiff alleges that she then got on her knees and pulled herself up to a standing position by holding on to her car door for support. It is undisputed that Plaintiff immediately left the scene and went directly to the Oktibbeha County Sheriff's Department to file a complaint against Defendant Sharp for assault. Defendant Sharp says he went to get an X-ray of his hand.

At the sheriff's department, Plaintiff filed a misconduct report on Defendant Sharp stating that Defendant Sharp had "caught hold to [her] clothes," "slammed [her] up against the ground," "handcuffed [her]," and "choked [her] with [her] shirt." *See* Pl.'s Statement [23-2] at 4. The other events that occurred at the sheriff's department are in dispute, but it is undisputed that Defendant Sharp signed an affidavit against Plaintiff at some point subsequent to Plaintiff's filing of the misconduct complaint against Defendant Sharp.

Plaintiff alleges that while she was making out the misconduct report, Defendant Sharp showed up and told Lindsey to arrest Plaintiff. Plaintiff asked, "For what?" and Defendant Sharp said he did not know. After Plaintiff finished making out the report, Plaintiff maintains that Defendant Sharp and Lindsey arrested her, did not read her her *Miranda* rights, told her they were actually not arresting her, but then took her fingerprints and gave her an orange top.

According to Plaintiff, the bond was set at $500.00, but Lindsey told her she could pay $25.00 to bond out. Plaintiff alleges that she paid the $25.00 and was released.

It is undisputed that after leaving the sheriff's department, Plaintiff went to the Oktibbeha County Hospital for treatment. Plaintiff alleges that she received treatment for the injuries to her shoulder and neck, a bruise on her breast, a scratch on her chin, body and back pain, and blood in her urine. Her medical records reveal that the reason for her exam was stated to be "[r]ight shoulder pain after assault" and the findings were that she had some pain but tested negative for fracture or dislocation of bone. *See* Pl.'s Med. Report [23-3] at 2. The impression was that she was in no acute distress. *Id.* at 2, 4.

Plaintiff then returned to the sheriff's department to file charges against Defendant Sharp. Defendant Sharp maintains that Plaintiff was told by Lindsey that no charges would be filed against Defendant Sharp until an investigation was conducted into the matter and until Plaintiff had met with the Sheriff concerning the matter.

On April 19, 2010, Oktibbeha County Circuit Court Judge Lee J. Howard held a probable cause hearing concerning Plaintiff's allegations against Defendant Sharp. Both Plaintiff and Deputy Brett Watson, the investigating officer, testified at the hearing. Based on the testimony and evidence presented, Judge Howard declined to issue an arrest warrant for Defendant Sharp, and no further proceedings ensued in connection with Plaintiff's charge against Defendant Sharp until Plaintiff commenced this civil suit.

Defendant Sharp and the Oktibbeha County Sheriff's Department charged Plaintiff with aggravated assault in connection with the above incidents. Plaintiff was prosecuted on these charges until all charges were dismissed without prejudice. *See* Nolle Prosse [23-6] at 1. With this factual background in mind, the Court turns to the motions before it.

13

### 3. Analysis and Discussion

At the outset, the Court notes that Defendants Oktibbeha County and the Oktibbeha County Sheriff's Department contend in their motion for summary judgment that Plaintiff has named Oktibbeha County and Oktibbeha County Sheriff's Department as separate defendants. However, as these defendants maintain, in Mississippi, a sheriff's department is not a separate and distinct legal entity. *See Brown v. Thompson*, 927 So. 3d 733, 737–38 (Miss. 2006). *See also Stewart v. Harrison Cnty. Sheriff's Dep't*, No. 1:07CV1172–LG–JMR, 2009 WL 427113, at *10 n.3 (S.D. Miss. Feb. 19, 2009); *Miller v. Choctaw Cnty. Sheriff Dep't*, No. 1:04CV96, 2006 WL 662340, *2 (N.D. Miss. Mar. 13, 2006); *see also Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). Therefore, this suit is not properly against the Oktibbeha County Sheriff's Department, as the same is not a proper governmental entity and thus must be dismissed as a defendant. The Court now turns to the merits of the summary judgment motion, noting that Plaintiff has brought four claims against Oktibbeha County: (1) false arrest, (2) excessive force, (3) free speech, and (4) malicious prosecution.

#### a. Excessive Force Claim

Oktibbeha County contends that summary judgment is proper on the excessive force claim against it. Plaintiff has offered no argument in support of sustaining her excessive force claim against Oktibbeha County. For the following reasons, the Court finds that the excessive force claim against Oktibbeha County must be dismissed on summary judgment.

Excessive force claims should be analyzed under the Fourth Amendment and its "reasonableness" standard. *Gutierrez v. City of San Antonio, Tex.*, 139 F.3d 441, 446 (5th Cir. 1998) (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). To succeed on an excessive force claim, the plaintiff must show "(1) an injury (2) which resulted

14

directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Williams v. Bramer*, 180 F.3d 699, 703, *clarified*, 186 F.3d 633, 634 (5th Cir. 1999). The plaintiff must demonstrate that he "suffered at least some form of injury" from the defendant's actions that is more than *de minimis*. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (quotation marks omitted). The degree of injury necessary to meet this requirement is related to the amount of force that was constitutionally permissible under the facts of the case. *Williams*, 180 F.3d at 703–04.

In carefully reviewing Defendant Sharp's motion for qualified immunity and all the parties' arguments and supporting documentation, the Court ruled that Plaintiff had failed to support her Fourth Amendment excessive force claim against Defendant Sharp, because her medical records showed she had no injury from the alleged altercation with Defendant Sharp, and further, that even if Plaintiff had shown that she suffered an injury, she failed to satisfy the second prong of her excessive force claim that any such injury resulted directly and only from the use of force that was clearly excessive to the need. *See* Ct.'s Order [25] & Mem. Op. [26] Granting & Denying In Part Def. Sharp's Mot. Qualified Immunity at 12–14. Therefore, the Court dismissed Plaintiff's excessive force claim against Defendant Sharp.

"There is no authority for an award of damages against a governmental unit based on the actions of particular officers when the factfinder has found that those officers inflicted no constitutional harm." *Greer v. Harris County, Tex.*, 537 F. App'x 546, 547 (5th Cir. 2013) (per curiam) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)). As Oktibbeha County correctly argues, Plaintiff's facts alleged in support of her excessive force claim concerned only Defendant Sharp. She has not identified actions of any other officers in support of her excessive force claim. Therefore, this Court has no authority for

an award of damages against Oktibbeha County based on the alleged actions of Defendant Sharp, when this Court has found that Defendant Sharp inflicted no excessive force against Plaintiff in violation of the Fourth Amendment. Thus, the excessive force claim against Oktibbeha County must be dismissed on this ground.

The Court notes that the claim also fails on the ground that Plaintiff has made no allegations, presented no argument, and attached no documentation supporting that Oktibbeha County was the "moving force" behind the alleged constitutional injury. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ("As our § 1983 municipal liability jurisprudence illustrates, . . . it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). Thus, the claim fails on this ground, as well. For all the foregoing reasons, Plaintiff's remaining excessive force claim against Oktibbeha County shall be dismissed.

### b. First Amendment Free Speech Claim

Oktibbeha County further contends that summary judgment is proper on the First Amendment free speech claim against it. Plaintiff has offered no argument in support of sustaining her free speech claim against Oktibbeha County. For the following reasons, the Court finds that the free speech claim against Oktibbeha County must be dismissed on summary judgment.

The First Amendment provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. AMEND. I. Adverse government action taken in retaliation for the exercise of protected speech violates the First Amendment. *See Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999). The validity of a First Amendment claim may depend on whether probable cause exists for the arrest. "If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008). In carefully considering Defendant Sharp's motion for qualified immunity and the parties' arguments and attached documentation, the Court found that Plaintiff had failed to allege a First Amendment free speech claim. Specifically, Plaintiff failed to allege what constitutionally protected speech she was engaged in at the time of the alleged circumstances, even though in such a claim, it is essential to know the alleged content or subject matter of the speech in order to analyze whether that speech is protected by the Constitution. Second, Plaintiff's only other allegation in support of her free speech claim was that she exercised her right to remain silent when Defendant Sharp questioned her and was arrested in retaliation for remaining silent. This allegation was not properly associated with her First Amendment free speech claim, as the right to remain silent derives from the Fifth Amendment, not the First Amendment. *See* Ct.'s Order [25] & Mem. Op. [26] Granting & Denying In Part Def. Sharp's Mot. Qualified Immunity at 14–16. Thus, the Court dismissed the First Amendment free speech claim against Defendant Sharp.

Because Plaintiff has failed to allege a First Amendment free speech claim, and because this Court has no authority for an award of damages against Oktibbeha County based on a First Amendment free speech claim against Defendant Sharp when that claim has been dismissed, *see*

*Greer*, 537 F. App'x at 547 (citing *Heller*, 475 U.S. at 799, 106 S. Ct. 1571), the First Amendment free speech claim against Oktibbeha County must be dismissed.

### c. False Arrest Claim

Although Oktibbeha County concedes that Plaintiff has satisfied her burden to come forward with sufficient evidence regarding a false arrest claim against Defendant Sharp, Oktibbeha County maintains that no evidence has been presented that an Oktibbeha County policy or custom was the moving force behind the alleged wrongful actions of Defendant Sharp. Specifically, Oktibbeha County maintains that Plaintiff has not presented evidence that Defendant Sharp or other officers were inappropriately trained or that there is a history of false arrests by deputies including Defendant Sharp. Oktibbeha County further maintains that Plaintiff has not presented evidence that Oktibbeha County has a history or of encouraging or condoning arresting individuals without probable cause. Thus, Oktibbeha County maintains that summary judgment is proper on Plaintiff's false arrest claim against Oktibbeha County.

Instead of filing a response to Oktibbeha County's motion for summary judgment, Plaintiff has filed a motion for summary judgment. Plaintiff asks the Court to determine as a matter of law that Defendants Oktibbeha County and Defendant Sharp are liable for false arrest and contends that the evidence indicates that Defendant Sharp arrested Plaintiff unlawfully without probable cause. Plaintiff presents three arguments in support. First, Plaintiff argues that the arrest warrant contained an incorrect statement that Plaintiff "repeatedly slammed [Defendant Sharp]'s fingers in a car door thereby causing significant injury requiring medical attention," that this statement was the basis for probable cause to arrest Plaintiff, and that without the statement, Defendant Sharp had no probable cause to arrest Plaintiff. Second, Plaintiff maintains that Defendant Sharp had knowledge not to proceed with his investigation before going to the site of

the incident, because upon arriving on the scene, Defendant Sharp called Officer James Lindsey and told him that Defendant Sharp found out Cassandra was not telling the truth about the matter and could not get anyone to answer the door. As the Court stated in its memorandum opinion ruling on Defendant Sharp's motion for qualified immunity, although the investigation report concerning the incident states that Defendant Sharp had called his commanding officer, James Lindsey, to inform him that Cassandra was not being truthful about the kidnapping, the report also notes that Lindsey advised Defendant Sharp that the sheriff's department could not do anything until they found out what was going on, and that Defendant Sharp apparently remained on the scene to find out what was going on. Third, Plaintiff maintains that Defendant Sharp confirmed in his deposition that he knew needed a court order to proceed. Therefore, Plaintiff maintains that proceeding in spite of this knowledge is a prima facie case of false arrest.

With respect to Oktibbeha County, Plaintiff conclusively states in her motion for summary judgment that Defendant Sharp was supported by Oktibbeha County in the alleged false arrest of Plaintiff. Plaintiff offers no factual support for this statement, but even if she had, mere support by Oktibbeha County of Defendant Sharp's alleged acts is not sufficient to demonstrate a false arrest claim against Oktibbeha County. Oktibbeha County can be liable under Section 1983 "only for acts that are directly attributable to it through some official action or imprimatur." *See Kastner v. Lawrence*, 390 F. App'x 311, 315 (5th Cir. 2010) (quoting *James v. Harris County, Tex.*, 577 F.3d 612, 617 (5th Cir. 2009) (internal quotation marks omitted)). A plaintiff must show "in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury." *See id.* at 315–16 (quoting *James*, 577 F.3d at 617). "That policy must be

19

unconstitutional or adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.' " *Id.* at 316 (quoting *James*, 577 F.3d at 617).

At most, Plaintiff has demonstrated genuine disputes of material fact that preclude summary judgment on her false arrest claim against Defendant Sharp. However, Plaintiff has failed to demonstrate a false arrest claim against Oktibbeha County, because she has presented no evidence that a custom or policy of Oktibbeha County was the moving force behind the alleged constitutional violation. Accordingly, Plaintiff's false arrest claim is dismissed insofar as it is asserted against Oktibbeha County.

### d. Malicious Prosecution Claim

Although Oktibbeha County concedes that Plaintiff has satisfied her burden to come forward with sufficient evidence regarding a malicious prosecution claim against Defendant Sharp, Oktibbeha County maintains that no evidence has been presented that an Oktibbeha County policy or custom was the moving force behind the alleged wrongful actions of Defendant Sharp. Specifically, Oktibbeha County maintains that Plaintiff has not presented evidence that Defendant Sharp or other officers were inappropriately trained or that there is a history of malicious prosecutions by deputies such as Defendant Sharp. Oktibbeha County further maintains that Plaintiff has not presented evidence that Oktibbeha County has a history of encouraging or condoning prosecuting arrestees out of malice. Thus, Oktibbeha County maintains that summary judgment is proper on Plaintiff's malicious prosecution claims against Oktibbeha County.

In Plaintiff's motion for summary judgment, Plaintiff asks this Court to determine as a matter of law that Defendants Oktibbeha County and Defendant Sharp are liable for malicious prosecution. Plaintiff contends that in Defendant Sharp's deposition he admits facts that

evidence retaliation leading to the malicious prosecution, specifically that Plaintiff was not under arrest at the scene but was only arrested after the sheriff's department learned that Plaintiff wanted to press charges against Defendant Sharp. Thus, Plaintiff argues that malicious prosecution is evidenced by Plaintiff not being in custody at the scene, but being arrested only after Plaintiff had left the scene under her own recognizance, arrived at a different location, and filed a complaint against Defendant Sharp. Plaintiff maintains that there is also a dispute between Defendant Sharp and Commander Watson as to having a prior injury to Defendant Sharp's finger.

As with Plaintiff's arguments supporting her false arrest claim, in her arguments supporting her malicious prosecution claim, Plaintiff has at most demonstrated genuine disputes of material fact that preclude summary judgment on the malicious prosecution against Defendant Sharp. However, as with her false arrest claim against Oktibbeha County, because she has presented no evidence that a custom or policy of Oktibbeha County was the moving force behind the alleged constitutional violation, Plaintiff has failed to demonstrate a malicious prosecution claim against Oktibbeha County. Her conclusory statement that Defendant Sharp was supported by Oktibbeha County in his alleged malicious prosecution of Plaintiff has no factual support and is insufficient to demonstrate a malicious prosecution claim against Oktibbeha County. Accordingly, Plaintiff's malicious prosecution claim is dismissed insofar as it is asserted against Oktibbeha County.

For all the foregoing reasons, Oktibbeha County's motion for summary judgment [67] shall be granted in all respects, as no genuine disputes of material fact remain with respect to any of the claims asserted against Oktibbeha County. Accordingly, all claims against Oktibbeha

County shall be dismissed, and Oktibbeha County and Oktibbeha County Sheriff's Department shall be dismissed as parties.

### D. Conclusion

In sum, the motion for summary judgment [67] filed by Defendants Oktibbeha County and Oktibbeha County Sheriff's Department is GRANTED; all claims against Defendants Oktibbeha County and Oktibbeha County Sheriff are DISMISSED; and Oktibbeha County and Oktibbeha County Sheriff's Department are DISMISSED as parties. Further, the motion to bifurcate [72 & 76] filed by Plaintiff Annie Tate is DENIED AND STRICKEN AS UNTIMELY FILED; the motion for summary judgment [73, 74, & 75] filed by Plaintiff Annie Tate is DENIED; the motion to strike certain motions [78] filed by Defendants Officer Rick Sharp, Oktibbeha County, and Oktibbeha County Sheriff's Department is GRANTED IN PART AND DENIED IN PART; and the renewed motion to dismiss [79] this action for failure to comply with Court Order filed by Defendants Officer Rick Sharp, Oktibbeha County, and Oktibbeha County Sheriff's Department is DENIED WITHOUT PREJUDICE.

The Court notes that the sanctions of $1,134.50 ordered to be paid by Plaintiff's counsel to Defendant's counsel for the reasonable expenses caused by Plaintiff's failure to obey the Court's Orders have not been paid as of the date of this opinion and corresponding order. Subject sanctions are to be paid on or before Monday, May 19, 2014.

A separate order in accordance with this opinion shall issue this day.

THIS, the 21st day of April, 2014.

_____
SENIOR JUDGE